# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | P. Michael Mahoney |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50412 | **DATE** | 10/01/2001 |
| **CASE TITLE** | CHRISTIDIS v. MASSANARI | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] In accordance with the attached Memorandum Opinion and Order, this Court orders that Plaintiff's motion for summary judgment be granted and that the decision of the Commissioner be reversed and remanded for a calculation of benefits. It is further ordered that Defendant's motion for summary judgment be denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

number of notices

OCT - 1 2001
date docketed

docketing deputy initials

10/01/2001
date mailed notice

| tml | courtroom deputy's initials |

U.S. DISTRICT COURT
CLERK
01 OCT - 1 AM 9: 55
FILED

Date/time received in central Clerk's Office

gg
mailing deputy initials

Document Number

19

JULIE L. CHRISTIDIS,                    )

Plaintiff,                              )          Case No.  00 C 50412

v.                                      )          Philip G. Reinhard
                                        )          P. Michael Mahoney
LARRY G. MASSANARI,                     )
Acting Commissioner of                  )
Social Security,                        )
                                        )
Defendant.                              )

## MEMORANDUM OPINION AND ORDER

Plaintiff, (Plaintiff), seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner).  See 42 U.S.C. §§ 405(g), 1383(c)(3).  The

Commissioner's final decision denied Plaintiff's application for Disability Insurance Benefits (DIB)

pursuant to Title XVI of the Social Security Act (the Act) and Supplemental Security Income. 42

U.S.C. §416(i), §423(d), §1381(a) and §1382(c).  This matter is before the Magistrate Judge for

review pursuant to consents filed March 2, 2001. See 28 U.S.C. § 636(c); Fed. R. Civ. Pro. 73.


## I.     BACKGROUND

Plaintiff initially applied for benefits on July 14, 1992, alleging disability since March 1,

1989. (Tr. 71-74).  On October 6, 1992, Plaintiff was notified that her application for benefits had

been denied. (Tr.88-95).  Plaintiff again filed for DIB and SSI benefits on October 5, 1993. (Tr. 96-

101).  On January 7, 1994, Plaintiff was notified that her applications had been denied. (Tr. 113-

119).  Plaintiff filed a Request for Reconsideration on January 26, 1994, which was denied on

February 28, 1994. (Tr. 120, 123-128).  Plaintiff then filed a Request for Hearing on March 10, 1994.

(Tr. 129-130). The transcript and hearing decision of March 27, 1995, are not included in th record.

The index of the record does indicate that on September 27, 1995 the Appeals Council remanded the

case back to the Administrative Law Judge (ALJ). Plaintiff attended a second hearing, with counsel,

on January 25, 1999. (Tr. 49-70). In a decision dated March 23, 1999, Plaintiff's request for benefits

was denied. On March 30, 1999, Plaintiff submitted her Request for Reconsideration to the Appeals

Council. (Tr. 10-12). Plaintiff's Request for Reconsideration was denied on October 20, 2000. (Tr.

7-8). Plaintiff filed an appeal of the decision of the SSA to this court on November 20, 2000.

## II.   **PLAINTIFF'S TESTIMONY**

At the beginning of the hearing, the ALJ noted that Plaintiff's onset date had been amended

to March 24, 1997, eliminating her DIB claim. (Tr. 51). The ALJ asked Plaintiff questions regarding

her drug and alcohol habits. (Tr. 52). Plaintiff initially responded that she had had a few beers about

a month ago and that she hadn't used drugs since January of 1997. (Tr. 52). The ALJ pointed out

that her records indicated that Plaintiff had used drugs more recently than 1997. (Tr. 53). Plaintiff

then clarified that she had relapsed in 1998 and used crack cocaine but it had only been for a matter

of days and was not regular use. (Tr. 55). Plaintiff testified that she is currently living with a man

and that he shares a house with three other people. (Tr. 53). In response to a question about how

long it had been since she had earned any income, Plaintiff testified that she hadn't in five or six

years. (Tr. 53). The ALJ noted that Plaintiff had reported to an evaluating psychiatrist that she had

been arrested in the previous year for prostitution. (Tr. 54). In response to questions regarding her

daily living activities, Plaintiff stated that she doesn't leave the house much because she doesn't like

being around other people. (Tr. 57). Plaintiff testified that the people she shares the house with work

2

during the day and that she spends much of the day watching television, sleeping and eating. (Tr. 57).

Plaintiff claimed that she had gained about thirty pounds in the last year. (Tr. 58). Plaintiff stated

that she didn't have any motivation anymore and didn't care about anything anymore. (Tr. 58).

Plaintiff testified that six months was the longest period of time she had held a job and that was ten

years ago. (Tr. 59). Plaintiff's attorney questioned her regarding her depression and Plaintiff testified

that she was more depressed now that she was not using drugs than she had been previously. (Tr.

60). Plaintiff testified that she usually doesn't get dressed each day and that she doesn't prepare

meals but eats all day. (Tr. 60-61). In response to questions by the ALJ regarding what she does

around the house, Plaintiff testified that she hadn't done any housework the previous day and had

only made herself a sandwich in the way of food preparation. (Tr. 61-62). Plaintiff testified that she

sometimes loaded the dishwasher, prepared some food and swept the floor. (Tr. 65-66).


### III. MEDICAL HISTORY[1]

#### Mental health information

A Psychiatric Review Technique Form (PRTF) completed by Dr. Elsie Villeflor, MD on

September 17, 1992, reports that Plaintiff suffered from an affective disorder and a substance

addiction disorder. (Tr. 78-86). Dr. Villeflor noted that Plaintiff had a long history of drug addiction

and chronic dysthymia. The PRTF indicates that Plaintiff is slightly limited in her activities of daily

living and social functioning and seldom has deficiencies of concentration persistence or pace. (Tr.

---

[1] This court notes that some records have been provided with respect to Plaintiff's treatment for various physical ailments including, pelvic inflammatory disease, cellulitis and mitral valve prolapse. (Tr. 312-330, 422-426). Because the basis for Plaintiff's claim for benefits is her depression this court reviewed these records to determine if they shed any light on Plaintiff's claims of disabling depression. The records do not provide any relevant information regarding Plaintiff's mental state and it is therefore unnecessary to summarize the records here.

85). Dr. Villeflor also completed a Mental Residual Functional Capacity Assessment on September 17, 1992. (Tr. 219-222). Dr. Villeflor found that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions. (Tr. 219). Dr. Villeflor concluded that Plaintiff retained the ability to do simple jobs. (Tr. 221). In an Activities of Daily Living Questionaire completed by Plaintiff on October 18, 1993, Plaintiff reported that she did not cook, clean or go shopping and that she had lost interest in everything but drug use. (Tr. 261). Plaintiff also reported that she did not get along with other people, was afraid of being hurt and that she had been beaten, robbed and raped. (Tr. 263). Another PRTF was completed on December 16, 1993, by Dr. Kuester. (Tr. 103-111). Dr. Kuester also indicated that Plaintiff suffered from an affective disorder and a substance addiction disorder. (Tr. 103). Dr. Kuester noted that Plaintiff exhibited symptoms of anhedonia, appetite disturbance, decreased energy and difficulty in concentrating or thinking. (Tr. 106). Like Dr. Villeflor, Dr. Kuester found Plaintiff to be slightly limited in her activities of daily living and social functioning and seldom experiences deficiencies in concentration persistence or pace. (Tr. 110).

Plaintiff has submitted records from her stays in substance abuse treatment facilities from 1986 to 1989. (Tr. 295-311). On October 29, 1986, Plaintiff was admitted to Rockford Memorial Hospital. (Tr. 302-311). Plaintiff's intake records indicate that she reported she has been fairly depressed all her life and has attempted suicide at least three times. (Tr. 307). Plaintiff's records also indicate that Plaintiff's difficulties began when she was quite young when at the age of nine Plaintiff's parents divorced and she was sexually abused by a neighbor. (Tr. 307). Plaintiff's mother drank heavily after the divorce and Plaintiff ran away at the age of thirteen and lived with a series of older men who took care of her. (Tr. 307). Plaintiff reported that she "did not like this lifestyle,

4

but saw no alternative." (Tr. 307). Plaintiff was discharged on November 9, 1986, and directed to a continuing care program. (Tr. 311). Plaintiff was evaluated by Sojourn House, Inc. on November 20, 1989, with a discharge summary dated December 29, 1989. (Tr. 295-301). Those records indicate that Plaintiff denied having any significant depression at the time, that her nutrition was poor, that she appeared to be at high risk for infectious diseases and that she suffered from polysubstance dependence and residential treatment was recommended. (Tr. 295-298). Plaintiff began residential treatment on November 22, 1989. (Tr. 299). On December 29, 1989, Plaintiff was discharged after being found to have left through the window at 4:30 am. (Tr. 301).

Records from July of 1990 indicate that Plaintiff was referred for residential treatment in Chicago for substance abuse in March of 1990 but that she did not successfully complete the program when she left the facility against staff advice. (Tr. 178-184). Records from Alcare of Rockford indicate that Plaintiff completed their detox program on October 23, 1989, January 27, 1990 and July 19, 1991. (Tr. 185-204). On November 2, 1989, Plaintiff was discharged from Alcare against program advice and did not fully complete the detox program. (Tr. 205-208). On those occasions, it was noted that Plaintiff had been using cocaine intravenously and also abused alcohol. (Tr. 185-208). The records from November of 1989 indicate that Plaintiff had a long history of drug and alcohol abuse beginning when she was thirteen years old. (Tr. 205). Those notes also reported that Plaintiff had resorted to prostitution to support her drug addiction. (Tr. 205). The most recent treatment records are from Morrison Community Hospital where Plaintiff completed a twenty-one day stay at The Bridge facility for her addiction from March 13, 1995, to April 3, 1995. (Tr. 341). Those records indicated that Plaintiff had a lot of guilt and low self-esteem. (Tr. 341). Plaintiff's counselor, Nancy Nielsen, indicated that Plaintiff's prognosis was fair due to her long history of

relapse. (Tr. 341).

Dr. M. Heinze, a clinical psychologist, completed a psychological evaluation on Plaintiff on August 20, 1992, to aid in the disability determination. (Tr. 213-215). Dr. Heinze reported that Plaintiff told him that she had completed the eighth grade, however, Dr. Heinze noted that the records indicated that Plaintiff had earned a GED in 1982. (Tr. 213). Plaintiff also reported that she currently worked full-time as a prostitute and earned over $1,000 a week. (Tr. 213). Dr. Heinze noted that Plaintiff had been married twice in the previous three years but that those relationships ended as a result of her drug addiction. (Tr. 213). Plaintiff reported to Dr. Heinze that she was depressed because she does not like the life she leads. (Tr. 213). Dr. Heinze noted that Plaintiff's speech was coherent and logical and that she kept on topic and maintained good eye contact, smiled and was congenial. (Tr. 214). Dr. Heinze concluded Plaintiff maintains the "ability to perform routine, repetitive tasks of a work-related nature in the culture in which she is living" but that she would have problems in a "straight culture" due to her drug and alcohol problems. (Tr. 215). Dr. Heinze evaluated Plaintiff a second time on November 30, 1993. (Tr. 276-279). Dr. Heinze indicated that Plaintiff reported having been out all night working as a prostitute and using drugs and alcohol. (Tr. 276). Dr. Heinze noted that Plaintiff's appearance was somewhat deteriorated since her previous appointment. (Tr. 277). Plaintiff reported that she is mainly depressed when using and Dr. Heinze noted that Plaintiff's depression did not appear to be severe and that she had some mild dysthymia secondary to drug problems. (Tr. 279).

Records from the Evergreen Recovery Center indicate that Plaintiff was treated for detox in February of 1987, October of 1992, March and April of 1993, March of 1995, November of 1995 and Plaintiff was admitted on August 25, 1993 and stayed for treatment through September 7, 1993,

when she left "A.W.O.L." (Tr. 227-257, 353-354, 441-460). Treatment notes from Plaintiff's stay on August 27, 1993, indicate that Plaintiff reported depression but that that was compounded by drug and alcohol use and did not require psychiatric treatment. (Tr. 230). August 31, 1993, treatment notes state that Plaintiff has a history of sexual trauma as both a child and as an adult and had thirty sexual partners in the last two months with only occasional condom use. (Tr. 231). Also, Plaintiff reported a twenty pound weight loss in the previous three months due to drug use. (Tr. 231). Plaintiff reported that she began using alcohol and cannabis at the age of thirteen, cocaine at fourteen and speed at fifteen. (Tr. 250). Plaintiff was admitted to Evergreen again on November 14, 1995, and remained there until December 3, 1995. (Tr. 441-460). Plaintiff was discharged with staff approval and her prognosis was noted to be good if she followed through with continuing care. (Tr. 455). Records from after her December 3, 1995, discharge from Evergreen indicate that Plaintiff initially cooperated with her outpatient plan but by March of 1996 had failed to maintain her scheduled outpatient appointments and was considered A.W.O.L. (Tr. 441-460).

Records from Rosecrance from February 16, 1996, indicate that Plaintiff was discharged from the substance abuse program on February 5, 1996, A.W.O.L. (Tr. 439-440). Those records noted that Plaintiff's prognosis was poor as she had demonstrated no recovery regimen or motivation towards a recovery lifestyle. (Tr. 439). Plaintiff was diagnosed with severe alcohol dependence and severe cocaine dependence. (Tr. 439-440).

In November of 1996, Plaintiff was referred to the outpatient drug free program at P.H.A.S.E. in Rockford in relation to substance abuse related criminal charges. (Tr. 461- 632). Plaintiff was discharged on April 1, 1997, without completing treatment. (Tr. 465). The P.H.A.S.E. records indicate that Plaintiff failed to show up for her outpatient appointments for twenty-one days and after

experiencing a relapse failed to follow through with inpatient treatment. (Tr. 470-472).

Plaintiff was seen by Dr. Delsie Gavali, MD, on February 10, 1997, in conjunction with her application for benefits. (Tr. 384-386). Dr. Gavali noted that Plaintiff stated a long history of drug and alcohol addiction and her medical history included chronic bilateral salpingitis and various sexually transmitted diseases. (Tr. 384). Dr. Gavali reported that Plaintiff was well groomed and dressed, pleasant, cooperative, oriented and had good eye contact. (Tr. 385). Dr. Gavali reported Plaintiff's social history as follows, Plaintiff was born in Fort Worth, Texas. Plaintiff's father was a gambler and not a good provider who fought a lot and beat up her older brother. Plaintiff's mom divorced her father when Plaintiff was nine and remarried soon afterward. At nine, Plaintiff began getting into trouble and was sexually abused by a friend's father. Plaintiff hitchhiked with a trucker and was sexually abused and gave sexual favors in exchange for taking care of her. At thirteen, Plaintiff lived with a sister in Rockford for two years. At fifteen, Plaintiff moved in with her boyfriend who was a drug addict and an alcoholic, it was then that Plaintiff began using drugs. Plaintiff left him after three years and began living on the streets. Plaintiff reported being arrested for prostitution at least eighteen times. Plaintiff has been married twice and both marriages ended as a result of her drug and alcohol use. (Tr. 385). Dr. Gavali found that Plaintiff was not delusional or paranoid but had poor judgment. (Tr. 385). Dr. Gavali diagnosed Plaintiff with polysubstance dependence, alcohol dependence and a dependent personality. (Tr. 386). Dr. Gavali noted that Plaintiff tried to portray herself as sicker than she really was and that she has functioned and has the capability of functioning, though she has not worked in a long time. (Tr. 386). Finally, Dr. Gavali reported "If given disability, she will be able to manage her money, but because of her extensive substance abuse and alcohol abuse, I doubt if she can use good judgment to manage her money,

8

though she is capable of making change and the other little things that she can do." (Tr. 386).

Plaintiff's most recent evaluation was performed by Dr. Gerald Hoffman, MD on September 24, 1998. (Tr. 633-637). Dr. Hoffman noted that Plaintiff was alert with an appropriate affect, she was neat in appearance, superficially friendly, made good eye contact and that she was somewhat depressed. (Tr. 633-634). Dr. Hoffman's report states that Plaintiff had been depressed for the past year, has not sought treatment because she has no money or insurance and stated she has discontinued alcohol and cocaine use voluntarily stating "I got tired of living the lifestyle of an addict and prostitute. I got tired of living in the street." (Tr. 633-634). Plaintiff informed Dr. Hoffman that her mother was an alcoholic, her father was not around, she was sexually abused by a neighbor at the age of nine and began using cocaine and alcohol at fifteen or sixteen. (Tr. 634). Plaintiff reported to Dr. Hoffman that when she gets depressed she doesn't want to do anything and that she gets angry a lot and is hateful. (Tr. 633). Plaintiff reported that she had last been arrested for prostitution the previous year and that her last relapse to cocaine use was three weeks ago and at that time she used crack for two days straight. (Tr. 633). Dr. Hoffman concluded that Plaintiff suffered from a depressive disorder, anergic type, but that he was unable to determine if it was a primary disorder or "substance-induced/withdrawal phenomena." (Tr. 635). Dr. Hoffman also noted that Plaintiff suffered from alcohol dependence in remission for six months and cocaine dependence with continuing cravings. (Tr. 635). Dr. Hoffman indicated that Plaintiff could benefit from medical treatment to help with the depression and cocaine craving if and when "she is sincere about her desire to remain abstinent." (Tr. 635). Finally, Dr. Hoffman reported "It is believed that this patient cannot manage money. She admitted that she would spend her money on cocaine if she had any." (Tr. 635).

ALJ Gilbert Sheard completed a PRTF on March 23, 1999. (Tr. 24). ALJ Shear found that Plaintiff suffered from an affective disorder and substance addiction disorder. (Tr. 25). With respect to the affective disorder, the ALJ found that Plaintiff suffered from a depressive syndrome, characterized by anhedonia, appetite disturbance, sleep disturbance, decreased energy and difficulty concentrating or thinking. (Tr. 26). The ALJ found that Plaintiff had marked limitations in her activities of daily living and social functioning with frequent deficiencies of concentration persistence and pace. (Tr. 27).

## IV.  **STANDARD OF REVIEW**

The court may affirm, modify, or reverse the ALJ's decision outright, or remand the proceeding for rehearing or hearing of additional evidence. 42 U.S.C. § 405(g). Review by the court, however is not *de novo*; the court "may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the ALJ." *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir. 1987) (citation omitted); *see also Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case accordingly are entrusted to the commissioner; "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the Commissioner's delegate the ALJ)." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971), *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the Commissioner's decision is supported by substantial evidence, it is conclusive and this court must affirm. 42 U.S.C. § 405(g); *see also Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir. 1988). "Substantial evidence" is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion."

*Richardson*, 402 U.S. at 401.

The Seventh Circuit demands even greater deference to the ALJ's evidentiary determinations. So long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability," the determination must stand on review. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). Minimal articulation means that an ALJ must provide an opinion that enables a reviewing court to trace the path of his reasoning. *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987), *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). Where a witness credibility determination is based upon the ALJ's subjective observation of the witness, the determination may only be disturbed if it is "patently wrong" or if it finds no support in the record. *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th cir. 1989), *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989). "However, when such determinations rest on objective factors of fundamental implausibilities rather than subjective considerations, [reviewing] courts have greater freedom to review the ALJ decision." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994), *Yousif v. Chater*, 901 F.Supp. 1377, 1384 (N.D.Ill. 1995).

## V.     FRAMEWORK FOR DECISION

The ALJ concluded that Plaintiff did not meet the Act's definition of "disabled," and accordingly denied her application for benefits. "Disabled" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological

11

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(c)(3)(C). *See Clark v. Sullivan*, 891 F.2d 175, 177 (7th Cir. 1988).

The Commissioner proceeds through as many as five steps in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (1998).[2] The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or is medically equivalent to an impairment in the Commissioner's Listing of Impairments; (4) whether the claimant is capable of performing work which the claimant performed in the past; and (5) whether the claimant is capable of performing any other work in the national economy.

At Step One, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520 (a),(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties that are done, or intended to be done, for pay or profit. 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, he is found not disabled, regardless of medical condition, age, education, or work experience, and the inquiry ends; if not, the inquiry proceeds to Step Two.

Step Two requires a determination whether the claimant is suffering from a severe impairment.[3] A severe impairment is one which significantly limits the claimant's physical or

---

[2]The Commissioner has promulgated parallel regulations governing disability determinations under Title II and Title XVI. See 20 C.F.R. Ch. III, Parts 404, 416. For syntactic simplicity, future references to Part 416 of the regulations will be omitted where they are identical to Part 404.

[3]The claimant need not specify a single disabling impairment, as the Commissioner will consider the combined affect of multiple impairments. See, e.g., 20 C.F.R. § 404.1520(c). For syntactic simplicity, however, this generic discussion of the Commissioner's decision-making process will use the singular "impairment" to include both singular and multiple impairments.

mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The claimant's age, education, and work experience are not considered in making a Step Two severity determination. 20 C.F.R. § 404.1520(c). If the claimant suffers from severe impairment, then the inquiry moves on to Step Three; if not, then the claimant is found to be not disabled, and the inquiry ends.

At Step Three, the claimant's impairment is compared to those listed in 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. The listings describe, for each of the major body systems, impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. §§ 404.1525(a). The listings streamline the decision process by identifying certain disabled claimants without need to continue the inquiry. *Bowen v. New York*, 476 U.S. 467 (1986). Accordingly, if the claimant's impairment meets or is medically equivalent to one in the listings, then the claimant is found to be disabled, and the inquiry ends; if not, the inquiry moves on to Step Four.

At Step Four, the Commissioner determines whether the claimant's residual functional capacity allows the claimant to return to past relevant work. Residual functional capacity is a measure of the abilities which the claimant retains despite his impairment. 20 C.F.R. § 404.1545(a). Although medical opinions bear strongly upon the determination of residual functional capacity, they are not conclusive; the determination is left to the Commissioner, who must resolve any discrepancies in the evidence and base a decision upon the record as a whole. 20 C.F.R. § 404.1527(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Past relevant work is work previously performed by the claimant that constituted substantial gainful activity and satisfied certain durational and recency requirements. 20 C.F.R. § 404.1465; Social Security Ruling 82-62. If the claimant's residual functional capacity allows him to return to past relevant work, then he is found

not disabled; if he is not so able, the inquiry proceeds to Step Five.

At Step Five, the Commissioner must establish that the claimant's residual functional capacity allows the claimant to engage in work found in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. The Commissioner may carry this burden by relying upon vocational expert testimony, or by showing that a claimant's residual functional capacity, age, education, and work experience coincide exactly with a rule in the Medical-Vocational Guidelines (the "grids"). *See* 20 C.F.R. Ch. III, Part 404 Subpart P, Appendix 2; *Walker v. Bowen*, 834 F.2d 635, 640 ( 7th Cir. 1987); Social Security Law and Practice, Volume 3, § 43:1. If the ALJ correctly relies on the grids, vocational expert evidence is unnecessary. *Luna v. Shalala,* 22 F.3d 687, 691-92 (7th Cir. 1994). If the Commissioner establishes that sufficient work exists in the national economy that the claimant is qualified and able to perform, then the claimant will be found not disabled; if not, the claimant will be found to be disabled.

## VI.     **ANALYSIS**

Before engaging in the sequential analysis, this court notes that Plaintiff has asserted that the Appeals Council committed an error of law in failing to grant review in this case. (Plaintiff's Memorandum at 5, filed 5/30/2001). Plaintiff claims that the Appeals Council was required to take review in this case because Plaintiff asserted an error of law and findings and conclusions not supported by substantial evidence by the ALJ. (Plaintiff's Memorandum at 6, filed 5/30/2001). Plaintiff cites 20 C.F.R. §416.1470(a) claiming that provision requires the Appeals Council to review the ALJ's decision if the ALJ commits an abuse of discretion, there is an error of law, the findings are not supported by substantial evidence or there is a broad policy or procedural issue that may

14

affect the general public interest. Plaintiff claims that the Appeals Council committed an error of law by refusing to review the ALJ's decision in spite of the fact that Plaintiff claimed the ALJ had committed an error of law and that his decision was not supported by substantial evidence. (Plaintiff's Memorandum at 5-6, filed 5/30/2001). Plaintiff incorrectly asserts that she may appeal the decision of the Appeals Council to this court. The decision of the Appeals Council is discretionary and unreviewable. *See, Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997) and *Damato v. Sullivan*, 945 F.2d 982, 988 (7th Cir. 1991).

A. Step One: Is the claimant currently engaged in substantial gainful activity?

In performing the Step One Analysis the ALJ found that Plaintiff had not engaged in any substantial gainful activity at any time relevant to his decision issued on March 23, 1999. (Tr. 18-23).

Under ordinary circumstances, a claimant is engaged in substantial gainful activity if the claimant's earnings averaged more than seven hundred and forty dollars per month for years after January 1, 2001. (20 C.F.R. § 1574 (b) (2) Table 1, as modified by 65 FR 82905, December 29, 2000).

The finding of the ALJ as to Step One of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step One of the Analysis is affirmed.

B. Step Two: Does the claimant suffer from a severe impairment?

In performing the Step Two Analysis the ALJ found Plaintiff suffered from severe impairments. Specifically, the ALJ found "the claimant has severe substance addiction disorder with a related affective disorder, with the latter not being present except for the presence of the former." (Tr. 19).

15

Substantial evidence exists to support the ALJ's determination that Plaintiff suffers from severe impairments.

C.    Step Three:  Does claimant's impairment meet or medically equate to an impairment in the Commissioner's listing of impairments?

In performing the analysis for Step Three the ALJ initially determined that Plaintiff's impairments did meet or equal an impairment in Appendix 1 to Subpart P of Regulations number 4. (Tr.22).  The ALJ found that Plaintiff's impairment has prevented her from working for at least twelve continuous months and that she has been under a disability as defined in the Act since March 24, 1997. (Tr. 22).  The ALJ found that Plaintiff met the requirements of the Listings as described in sections 12.09 and 12.04.  Section 12.09 describes the requirements for an impairment to be a disabling severity with respect to substance addiction disorders and section 12.04 relates to affective disorders. 20 C.F.R. 404, Subpt. P, App. 1, Section 12.04 and 12.09.  However, the ALJ determined that Plaintiff would not have a severe impairment which significantly limited her ability to do basic work activity in the absence of drug and alcohol abuse as her depression is secondary to drug and alcohol abuse and therefore, pursuant to Section 105 of Public Law 104-121, enacted March 29, 1996, Plaintiff is ineligible for benefits. See, 42 U.S.C. §423(d)(2)(C). (Tr. 22).

Congress' 1996 amendment of the Social Security Act provides

> (C) An individual shall not be considered to be disabled for purposes of this title [42 USCS §§§§ 401 et seq.] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled. 42 U.S.C. §423(d)(2)(C).

Materiality is to be determined in accordance with 20 C.F.R. 416.935, which provides that the key factor to consider in determining whether substance addiction is a contributing factor is whether a claimant would still be found disabled if he or she stopped using drugs or alcohol. 20 C.F.R.

416.935(b)(1). The ALJ determined that the medical evidence established that Plaintiff would not be disabled if she stopped using drugs and alcohol and that Plaintiff was therefore not entitled to benefits. (Tr. 22).

Plaintiff asserts that the ALJ improperly determined that Plaintiff's substance addiction was a contributing factor material to the finding of disability. Plaintiff asserts that the most recent psychiatric report, conducted by Dr. Hoffman on September 24, 1998, supports Plaintiff's claims that she no longer uses drugs and alcohol and remains disabled as a result of her depression. (Plaintiff's Memorandum at 7, filed 3/30/2001). This court has closely reviewed the ALJ's findings and the psychiatric reports submitted by Plaintiff and finds that Plaintiff is incorrect in her interpretation of Dr. Hoffman's report. Dr. Hoffman's diagnosis with respect to Plaintiff's substance addiction states

"Cocaine Dependence: Cocaine craving continues intermittently. She used cocaine within the last three weeks. She's had no medical treatment to date, which could help her with the depression and craving if and when she is sincere about her desire to remain abstinent." (Tr. 635). There is no finding that Plaintiff's cocaine addiction is in remission and given Plaintiff's recent lapse at the time of the evaluation and hearing, such a finding would have been unjustified.

Plaintiff also cites a bulletin from the Social Security Administration, Office of Disability which related guidelines to adjudicators regarding how to address issues relating to findings of drug and alcohol abuse. Cox, Dale, Social Security Administration, Emergency Teletype, August 30, 1996. In that bulletin, adjudicators were instructed that in cases where the restrictions and limitations imposed by a substance abuse disorder cannot be disentangled from those imposed by another mental disorder, a finding of "not material" would be appropriate. *Id.* at Question 29.

29. Q. The most complicated and difficult determinations of materiality will involve individuals with documented substance abuse disorders and one or more other mental impairments. In many of these instances, it will be very difficult to disentangle the restrictions and limitations imposed by the substance use disorder from those resulting from the other mental impairment(s). Can any examples be provided for how to handle the materiality determination in these situations, or can any guidance be provided for the type of information that should be used in trying to assess the impact of each impairment.

A. We know of no research data upon which to reliably predict the expected improvement in a coexisting mental impairment(s) should drug/alcohol use stop. The most useful evidence that might be obtained in such cases is that relating to a period when the individual was not using drugs/alcohol. Of course, when evaluating this type of evidence consideration must be given to the length of the period of abstinence, how recently it occurred, and whether there may have been any increase in the limitations and restrictions imposed by the other mental impairments since the last period of abstinence. When it is not possible to separate the mental restrictions and limitations imposed by DAA [drug and alcohol abuse] and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate. *Id.*

Defendant concedes that POMS DI 90070.050(D)(1) directs a finding of non-materiality in cases where a plaintiff establishes that it is not clear whether he or she would be disabled if he or she stopped using drugs and alcohol. (Defendant's Response at 12, filed 5/30/2001). Plaintiff relies on Dr. Hoffman's report that he was unable to determine whether Plaintiff's depression was a primary disorder or the result of substance induced withdrawal. (Tr. 635). Plaintiff claims that the ALJ should have found that Plaintiff's substance addiction was not material to her depression because there was insufficient evidence to determine whether Plaintiff's limitations were the result of her addiction disorder or her depression. (Plaintiff's Memorandum at 8, filed 3/30/2001).

The ALJ erred in finding that Plaintiff's substance abuse disorder was material to her depression. While the record in this case consists of approximately 650 pages, very little of the records provided address Plaintiff's depression. The majority of the evidence in the record relates

to Plaintiff's substance abuse disorder. Virtually, the only relevant information regarding Plaintiff's depression is Dr. Hoffman's evaluation of September, 1998. In that report, Dr. Hoffman found that he could not determine whether or not Plaintiff's depression was a primary disorder. However, the ALJ found Dr. Hoffman's determination as to Plaintiff's depression was not persuasive and found that Plaintiff had not shown that her depressive disorder alone was severe. (Tr. 20). It appears from the ALJ's hearing decision that the ALJ relied upon Dr. Gavali's lack of findings regarding depression and his own findings regarding Plaintiff's lack of credibility to reach the conclusion that Plaintiff's depression was not severe. Further, this court notes the ALJ did not refer to the bulletin that directed him to find that Plaintiff's substance abuse disorder was not material if the effects that disorder could not be separated from the effects of her other mental impairment, depression.

The ALJ's findings are not supported by substantial evidence. While the regulations do provide that the determination as to materiality is reserved to the Commissioner and the findings of a consulting specialist are not controlling, the ALJ must still demonstrate that his findings are supported by substantial evidence. *See*, 20 C.F.R §416.927(e)(1), SSR 96-5 and 42 U.S.C. §405(g) (1991) (made applicable to SSI by 42 U.S.C. §1383(c)(3) (1992)). In this case, the ALJ did not sufficiently detail his reasons for discounting a portion of Dr. Hoffman's findings. The ALJ accepted Dr. Hoffman's finding that Plaintiff suffered from a substance abuse disorder but did not accept Dr. Hoffman's conclusion that he could not determine whether Plaintiff's depression was a primary disorder. Additionally, other than the fact that Dr. Gavali did not find Plaintiff to be depressed, in an evaluation conducted eighteen months earlier than Dr. Hoffman's, the ALJ cites no evidence that contradicts Dr. Hoffman's report. Plaintiff reported to Dr. Hoffman and during her hearing, and there is no evidence in the record to contradict those assertions, that other than several brief relapses she had not used drugs or alcohol for at least two years.

19

Finally, this court notes that the ALJ did find Plaintiff to be disabled pursuant to both Sections 12.09 and 12.04 of the Listings. The ALJ found,

> The undersigned finds that the claimant has severe substance addiction disorder with a related affective disorder, with the latter not being present except for the presence of the former. This has resulted in marked restrictions of activities of daily living and social functioning with frequent deficiencies of concentration. Thus, this meets the criteria for disability under Listing 12.04 and 12.09 in Appendix 1, Subpart P, Regulations No. 4. This is supported by the assessment of Dr. Hoffman who noted poor to no ability to make occupational adjustments with fair to no ability to make performance adjustments and fair to no ability to make personal-social adjustments except for good ability to maintain personal appearance. (Tr. 19-20).

Because the ALJ determined that Plaintiff met the listings but incorrectly determined that drug and alcohol abuse was material, this court finds that Plaintiff is disabled pursuant to the Listings.

The ALJ's decision at Step Three is not supported by substantial evidence, therefore, the ALJ's decision is reversed at this step.

D.     Step Four:  Is the claimant capable of performing work which the claimant performed in the past?

The ALJ did not provide an analysis at Step Four. The ALJ determined at Step Three that Plaintiff was ineligible for disability benefits.

E.     Step Five: Is the claimant capable of performing any work existing in substantial numbers in the national economy?

The ALJ did not provide an analysis at Step Five. The ALJ determined at Step Three that Plaintiff was ineligible for disability benefits.

## VII.   CONCLUSION

For the above reasons, it is hereby ordered that Plaintiff's motion for summary judgment be

granted and the decision of the Commissioner be reversed and remanded for a calculation of benefits. Further, it is ordered that Defendant's motion for summary judgment be denied. Finally, this court notes that both Dr. Hoffman and Dr. Gavali expressed reservations regarding Plaintiff's ability to manage her money and regarding her judgment in doing so and expects that appropriate action will be taken to address this issue.

ENTER:

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 6/1/01